## In re HAMRICK.

District Court, W. D. North Carolina.
Feb. 13, 1932.

C. O. Ridings, of Forest City, N. C., for bankrupt.

John W. Wallace, of Statesville, N. C., and Quinn, Hamrick & Harris and W. C. Mc-Rorie, all of Rutherfordton, N. C., for petitioning creditors.

WEBB, District Judge.

This matter is before me upon a certificate of review from the referee in bankruptcy, R. Marion Ross.

The bankrupt was a merchant doing business in Rutherford county. On March 10, 1930, a representative of Bradstreet's seems to have called upon the merchant, now the bankrupt, for a statement of his financial condition, and, among other things, he told the reporter that he estimated his real estate to be valued at $20,000. In this statement as made out by the reporter and signed by A. V. Hamrick is the sentence, "Real estate in my own name."

Some time in the first part of the year 1931 the merchant was placed in involuntary bankruptcy, and upon investigation of his assets it developed that he and his wife owned some real estate by entirety, the value of which, so far as I am able to gather from the record and the briefs, is not shown by the testimony, except a statement of counsel for the creditors that it was worth "several thousand dollars." The appraisers appointed by the referee to value his personal property and real estate estimated the value of all of his various lots and lands, including two small houses, at $3,241. This valuation was placed upon his real estate, which is subject to his debts, and does not include the estate held by entirety by himself and wife.

The bankrupt requested that his homestead exemptions be given him out of a part of this $3,241 worth of land, and accordingly he was allotted as his homestead a one-half undivided interest in two tracts of land, one tract containing 28.43 acres and the other tract containing 53.35 acres.

His homestead was allotted to the bankrupt by the trustee. Whereupon the attorneys for the creditors objected and excepted to the allowance of the homestead in these lands on the ground that the bankrupt should not have been allowed any homestead at all, or, if allowed any, should have been compelled to take it in the estate owned by himself and wife. The objectors did not contend that the bankrupt has been guilty of fraud or that he has concealed any of his assets. Indeed, when notice of his application for discharge was given to the creditors, no one appeared before the referee to object to the granting of his discharge; and consequently the referee in his report to this court found as a fact that the bankrupt had complied with all the bankruptcy laws, and recommended that he be discharged; it appearing, as stated by the referee, that no written objection of any kind was filed to his discharge.

Upon the filing of this report with this court, it was ordered, on the 14th of May, 1931, that the bankrupt be granted his discharge in accordance with the acts of Congress relating to bankruptcy.

The objectors, who are some of the bankrupt's creditors, contend that the bankrupt made an untrue statement when he told the reporter for Bradstreet's that he owned $20,000 worth of real estate "in his own name," and they contend that at least part of this land was owned both by himself and his wife, and that the bankrupt should be estopped from claiming his homestead in other lands than those owned by himself and wife. I do not think that the doctrine of estoppel can be applied in a case like this.

If I had the power, I might abolish the law or rule of estates by entirety, and subject half of the land he owned to the debts of the husband and the other half to the debts of the wife; but, this rule or law being well established in the property history of our state, I am not at liberty to disregard it, even though it might appear that an inequitable thing is being done by observing it.

The reporter for Bradstreet's was within a few miles of the county seat, where the deed to this land was publicly registered, and he could have discovered by a very little investigation in whose name or names the real estate was held. Indeed, it is possible that the bankrupt, whose character was proven good by one of his largest creditors, might have, and did, assume that the land held in his name and his wife's was a part of the real estate "in his own name." It is certain that there is no way to compel the bankrupt to accept his homestead out of this estate by entirety held in the name of himself and wife. That being the case, shall he be denied his homestead in other lands because he made a statement to a reporter that his real estate was held in his own name? I do not think so. In view of article 10, section 2, of the Constitution of North Carolina, which provides: "Every homestead, and the dwellings and buildings used therewith, not exceeding in value one thousand dollars, to be selected by the owner thereof, * * * shall be exempt from sale under execution or other final process obtained on any debt," etc., it seems plain to me that the doctrine of estoppel cannot deny him his right to a homestead in lands which were subject to his debts. In selecting the land for his homestead exemption, he is not restricted to the tract on which he lives. Mayho v. Cotton, 69 N. C. 289.

The objectors may have pleaded the fraud which they now complain of, which they claim is only constructive or legal fraud, in bar of his discharge, but this was not done, and he was allowed to be discharged without objection on the part of anybody. I am therefore unable to see how this bankrupt can be denied his constitutional right of homestead in the lands allotted to him by the trustee, whose act has been ratified and affirmed by the referee.

It is therefore the judgment of the court that the action of the trustee in allotting the lands described above to the bankrupt is approved, and the action of the referee in affirming said allotment of homestead is hereby approved and affirmed.